Bobby **MARKHAM,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–85–00434–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1988.

Richard E. Langlois, Kosub & Langlois, San Antonio, for appellant.

Sam Millsap, Jr., Former Crim. Dist. Atty., Fred G. Rodriguez, Crim. Dist. Atty., Robert Reaves, Edward Shaughnessy, III, San Antonio, for State.

Before CADENA, C.J., and BUTTS and CANTU, JJ.

OPINION

CANTU, Justice.

Appellant's conviction of burglary of a vehicle was set aside by an opinion of this Court delivered on July 9, 1986. *Markham v. State,* 714 S.W.2d 93 (Tex.App.—San Antonio 1986), *rev'd, Markham v. State,* 751 S.W.2d 190 (Tex.Crim.App.1988). The sole contention on appeal was appellant's challenge to the sufficiency of the evidence.

The Texas Court of Criminal Appeals granted the State's petitions for discretionary review, reversed the judgment of this Court and remanded the cause for consideration of appellant's sole point of error "in a manner not inconsistent with this opinion." *Markham v. State,* 751 S.W.2d 190 (Tex. Crim.App.1988).

The Court of Criminal Appeals granted both of the State's petitions for discretionary review and upheld both contentions.[1]

We will review the evidence pursuant to the guidelines given by the Court of Criminal Appeals.

We borrow a recitation of the facts from our original opinion:

The State presented three witnesses at the trial. The complaining witness testified that on May 21, 1985, she stopped at a San Antonio Shamrock service station to purchase gas for her automobile. According to the complainant, she was inside the station for approximately three minutes. When she returned to her automobile, a pink leather purse she had left on the seat of the car was gone. The complainant called the police, who arrived within ten minutes. The police notified other officers via the police radio that the burglary had just occurred and that a pink purse had been taken. The complainant did not see the appellant or any other person enter her car.

The State also called two San Antonio Police officers who were working undercover on the day in question to testify. One of the officers, Joe Morris, related that he observed a 1977 red and white Buick, that was under surveillance for suspected involvement in several recent thefts, parked at the Shamrock service station. Morris had been following the Buick, but had lost sight of it for approximately ten minutes. When he relocated the vehicle it was at the Shamrock station. Three men had been in the vehicle while Morris was following it, however, only two men were in the car at the station. Morris parked approximately 100 feet from the Buick and observed a man wearing a green shirt get into the right front passenger side of the car. The man in the green shirt did not have anything in his hands when he got into the car. The Buick left the Shamrock station followed by Morris.

While keeping the Buick under surveillance, Morris heard the broadcast on his police radio concerning the car that had been burglarized at the Shamrock station, and the pink purse that had been taken.

George Lockamy, the other undercover officer involved in the surveillance of the Buick, testified that he had taken over following the Buick when he too heard the broadcast concerning the stolen pink purse from the automobile at the Shamrock station.

1. The first petition alleged that this Court erroneously relied upon the "close juxtaposition" rule and failed to apply the law of parties to the facts of the case in reviewing the evidence for sufficiency.

The second petition alleged that the holding in the instant case was in conflict with the holding in the companion case of *Phelps v. State,* 730 S.W.2d 198 (Tex.App.—San Antonio 1987, no pet.) decided by a different panel of this Court.

Lockamy followed the Buick to a parking lot. The Buick made a u-turn and parked next to Lockamy's car. According to Lockamy's testimony, he determined that the occupants of the Buick recognized that he (Lockamy) was following them, and wanted to find out who he was. Lockamy got out of his car and approached the Buick. Inside, on the back seat, was a pink purse with its contents scattered about. Identification and credit cards near the purse bore the complainant's name. The appellant was sitting in the front passenger seat and was wearing a green shirt. Neither of the other occupants was wearing a green shirt.

Lockamy testified that the right front seat passenger was talking with his arm over the front seat of the Buick to the occupant in the back seat while he was following the Buick. However, at no time did any of the witnesses see appellant with the purse or its contents.

The State contends that appellant's unexplained possession of recently stolen property is alone sufficient to support a conviction for the burglary in which the property was stolen. Since appellant was in the car with the pink purse, and was observed outside the Buick at the location of the burglary, the State maintains that the evidence is sufficient to support appellant's conviction.

Appellant, however, argues that the circumstantial evidence is insufficient. Appellant points out that there were two other men in the vehicle and that appellant himself was not seen in possession of the purse or its contents. Further, appellant argues that the purse was in the back seat of the Buick while he was in the front seat, and that he did not own the vehicle. Thus, appellant maintains that every reasonable hypothesis other than that of guilt has not been excluded. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim.App.1983) (en banc).

■ Where there is independent evidence of burglary, an unexplained, *personal or exclusive* possession of recently stolen property is alone sufficient to support a conviction for the burglary from which the property is taken. *Jackson v. State*, 645 S.W.2d 303 (Tex.Crim.App.1983); *Williams v. State*, 621 S.W.2d 613 (Tex.Crim.App. 1981), *cert. denied*, 456 U.S. 908, 102 S.Ct. 1755, 72 L.Ed.2d 165 (1982).

We recognize and agree with the Court of Criminal Appeals that the "close juxtaposition" rule has generally been applied in cases where the necessity for a circumstantial evidence charge is in question. With the holding in *Hankins v. State*, 646 S.W. 2d 191 (Tex.Crim.App.1981) (opinion on rehearing) the need for that determination has been obviated since a charge on circumstantial evidence is no longer required and has little value and only confuses.

The rule, however, served other purposes most of which are no longer viable ones.[2] One of these purposes was in recognition of the nature of evidence in a qualitative sense. The rule thus recognized that under certain circumstances purely circumstantial evidence assumed the force of direct evidence which in turn was sufficient to sustain a conviction without the need to rely upon inferences or presumptions.

The rule was thus one favorable to the State as it was designed to deprive the defendant of a charge on circumstantial evidence.

Our allusion to the rule was intended to show that the evidence adduced was not such as qualitatively rose to the equivalent of direct evidence and that, in conjunction with the law of parties, the rule of unexplained possession of recently stolen property, still did not present such evidence as met the proof required to sustain a conviction. We, in fact, held that the State reaped no benefit from such a rule and the inferences it permitted.

We then proceeded to review what we considered "weak circumstantial evidence" in the light most favorable to the verdict and concluded that a rational trier of fact

---

**2.** *See* Note, *Evidence—Close Juxtaposition Doctrine—Instructions to Juries,* 4 AM.J.CRIM.L. 227 (1975–1976); *See also Coleman v. State,* 530 S.W.2d 823 (Tex.Crim.App.1975) [Roberts, J. dissenting].

could not have found the essential elements of the crime beyond a reasonable doubt.

In arriving at our conclusion we barely made passing reference to the law of parties when we recognized that "appellant's mere presence in the car cannot alone sustain his conviction." We admit that our application of the law of parties could and should have been more exhaustive. To that end, we now focus our attention. But before doing so we think it appropriate to address another of the Court of Criminal Appeals' observations so that we may address appellant's sole point of error in a manner not inconsistent with their guidelines.

We understand that court's opinion to have sustained the State's contention that our holding is in conflict with the holding in *Phelps v. State, supra,* because said case is a companion case to this case since it involves one of appellant's co-defendants.

We have a problem with the Court's conclusion that a conflict exists between the two cases as far as the facts appear to be sufficient in *Phelps* to sustain that conviction and our holding that they do not as against *Markham.*

██ Nothing in the instant record reveals that the evidence in the *Phelps* case was similar, identical or otherwise. It is, therefore, mere speculation to suppose that the evidence was the same in both trials. Moreover, it is highly inappropriate to resort to another record to find support for the sufficiency of the evidence in this case. *Ballew v. State,* 82 Tex.Cr.R. 398, 199 S.W. 1109 (1917); *Wisnoski v. State,* 68 Tex. Cr.R. 382, 153 S.W. 316 (1913). *See also Harrington v. State,* 135 Tex.Cr.R. 243, 117 S.W.2d 1091 (Tex.Crim.App.1938).

██ Reluctantly and with strong reservation we have, nevertheless, examined the record in *Phelps* and immediately note the following differences.[3]

### PHELPS

1. tried on November 21, 1985
2. Prosecutor—Tina Tussay
3. Defense Attorney—Carol H. Weir
4. Witnesses
   (a) Terri May—6 pages of testimony
   (b) Officer Joe Morris—27 pages of testimony
   (c) Officer George Lockamy—20 pages of testimony

### MARKHAM

1. tried on September 17, 1985
2. Prosecutor—Robert Reaves
3. Defense Attorney—Oscar H. Villarreal
4. Witnesses
   (a) Officer Joe Morris—24 pages of testimony
   (b) Officer George Lockamy—12 pages of testimony
   (c) Terri May—5 pages of testimony

It is evident that when the *Phelps* case was tried the State had the benefit of two months to digest the testimony from the *Markham* case before prosecuting Phelps.

Whether the case against Phelps was a stronger one is purely conjectural and any expression we might make would serve no purpose. We decline to engage in a qualitative or quantitative comparison of both cases because the law and our oaths require us to review each case upon its own merits and from its own record.

We, nevertheless, make the following single observation of the evidence which we think is crucial. The following testimony of Officer Morris is from the *Markham* case:

MR. REAVES (Prosecutor):

Q: Will you describe to the jury what your surveillance consisted of concerning this particular automobile?

A: Well, again, referring to my report, we followed it; it was going north on I.H. 35 access road and it turned east on Walzem Road.

Q: When you say we followed it, were you in a marked patrol car at that time?

---

3. The *Phelps* case was affirmed by this Court and no petition for discretionary review was applied for by either party. The mandate, therefore, issued and the case reached finality.

A: No, sir.

Q: Was anybody else in your vehicle?

A: No, sir.

Q: When you refer to we, who are you talking about?

A: Detective Cisneros.

Q: He was in a separate vehicle. Is that correct?

A: Yes.

Q: Go ahead.

A: It turned on Walzem Road and we lost sight of it on Walzem Road; and I had in the meantime radioed other unmarked task force units and they were on the way and they were already in the area when I spotted the vehicle again.

Q: Now, do you recall approximately what time it was when you first came into contact with the suspect vehicle?

A: Yes, sir, it was approximately seven o'clock in the evening.

Q: P.M.

A: Yes, sir.

Q: And yourself and Officer Cisneros started to follow that car. Is that correct?

A: Yes, sir.

Q: Then you lost sight of it. Is that correct?

A: Yes, sir.

Q: Now, how much time passed from the time you lost sight of it until the time that you saw it again, approximately how much time?

A: Ten or fifteen minutes.

Q: Ten or fifteen minutes. And where did you see the vehicle again?

A: At the corner of Midcrown and Walzem at a Shamrock station.

Q: Is that a service station?

A: Yes, sir.

Q: How far were you from the vehicle when you observed it at the Shamrock station?

A: I parked, I would estimate, a hundred yards from it.

Q: And how far was Officer Cisneros?

A: I don't know.

Q: Will you tell the jury what you observed while the automobile was parked at the Shamrock station?

A: I observed one individual with a green shirt outside of the vehicle.

Q: Okay. Green shirt.

A: Yes, sir.

Q: Was it a button-up or pullover shirt?

A: I couldn't tell at that distance.

Q: How was your visibility that night?

A: I didn't see him get out of the car. I saw him walking near, near the car.

Q: Was he putting gas in the car? Was he buying anything?

A: I couldn't tell.

Q: Did you see anybody else that was inside that car get out of the car?

A: No sir.

Q: Did you see the person in the green shirt get back in the car?

A: Yes, sir. He appeared to get back in the car.

Q: How long was he outside of the car?

A: I observed him for maybe, I would say, five minutes.

Q: Now, if I understand your testimony correctly, when you relocated this vehicle over at the Shamrock service station, this individual in the green shirt was already outside the vehicle. Is that right?

A: Yes, sir.

Q: You just saw him get back in.

A: Yes, sir.

Q: Did you see him get back in with anything?

A: No, sir.

Q: After the individual got back into the car, did they leave immediately?

A: Yes, sir.

Q: Which direction did they proceed in?

A: It went east on Walzem to Gibbs–Sprawl Road and then went to Rittiman Road and turned south on Interstate Highway 35.

Q: Okay. Did you keep them in view during this entire period?

A: I personally didn't the entire time but other task force units—

MR. VILLARREAL: Objection, your Honor. Hearsay.

THE COURT: Sustained.

The following is an excerpt from the testimony of Officer Morris in the *Phelps* case.

Q: ... did you maintain surveillance on a 1977 Buick with a white top and red body?

A: Yes, Ma'am.

Q: Where did you begin your surveillance on this vehicle?

A: At Pam Am, which is the access road to Interstate 35 and Walzem.

Q: And what route did this vehicle take while you were following it?

A: It turned right, or east on Walzem?

\* \* \* \* \* \*

A: Went back out on Walzem Road and *I lost sight of it and didn't see it for several minutes.* I finally spotted it again at the Shamrock station at Midcrown and Walzem.

\* \* \* \* \* \*

Q: At the time that you spotted this vehicle again, can you recall if any of the occupants of the vehicle had exited the vehicle?

\* \* \* \* \* \*

A: There was one individual out of the car at the Shamrock.

\* \* \* \* \* \*

Q: ... What did you observe this individual do, if anything?

A: I just saw him standing outside of the car. After just a minute or so, he got back in the car and the car left. (emphasis ours)

The *Phelps* opinion notes that that case was a circumstantial evidence case where the three co-defendants were kept under surveillance by police officers from the time they left a service station until the time of their arrest.

We think the observation to be made should focus upon the evidence or lack of evidence prior to the time the co-defendants left the scene.

Again we draw from the majority opinion in *Phelps.*

The automobile which appellant drove was under police surveillance. Officer Morris, of the San Antonio Police Department, testified he constantly watched the automobile he located parked at the station. The offense occurred within a few minutes at the station.

We doubt that the record in *Phelps* supports this observation. It definitely does not in the *Markham* case. The burglarious entry occurred prior to officer Morris' arrival at the Shamrock station. There is absolutely no evidence that appellant had anything to do with the removal of the purse from the complainant's car. Nor is there any evidence that appellant was even an occupant of the vehicle being surveilled. His first identification placed him outside of the vehicle prior to entering it.

The fact that the purse ultimately surfaces in a vehicle occupied by three individuals may give rise to an inference of someone's guilt. But before an inference of appellant's guilt as a party can arise more is required. It [the inference] does not and should not suffice to support a conviction.

The trial court charged the jury on parties as follows:

Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense.

Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

*See also* TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974).

In conducting an analysis of the evidence under the theory relied upon by the State and by the dissenting judge in her opinion, specifically approved of by the Court of Criminal Appeals, we will touch upon those other circumstances to be considered along with mere presence, to try to arrive at

sufficient evidence to show that appellant was a participant.

### Flight

■ It is a well accepted rule of law that flight alone will not support a guilty verdict, but evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn. *Valdez v. State*, 623 S.W.2d 317 (Tex.Crim.App. 1981).

In *Phelps* the majority concluded that there was evidence that Phelps was present at the scene of the crime, that he drove the car and fled the scene with his companions.

■ We now look at the evidence in the instant case. Officer Morris who followed the car in which appellant was an occupant testified that he observed appellant for about 5 minutes, that appellant then got into the car and that the vehicle left immediately. It was then followed for some 15 to 30 minutes until it pulled into a commercial parking lot and parked next to the officer's car which had been following behind. During the entire time that officers followed the vehicle in which appellant was a passenger there was not a single traffic violation committed.

There is nothing in the *Markham* record to indicate that appellant and the vehicle he was in "fled" the scene of the crime. One can hardly draw any presumption or inference from the fact that a vehicle departed from a commercial establishment. Moreover, the vehicle travelled for some distance at a normal rate of speed and voluntarily stopped to investigate the reason for being followed without evidence of any furtive gestures.

### Unexplained Possession

■ In 5 TEX.CRIM.PRAC.GUIDE § 126.01[3] it is said:

Evidence that a burglary has occurred and the defendant is in possession of property stolen from the place burglarized can create an inference that the defendant is guilty of the burglary. To warrant such an inference from the circumstances of possession alone, the State must show that the possession was personal, recent, and unexplained, and that the defendant made a distinct and conscious assertion of right to the property. [*Rodriguez v. State*, 549 S.W.2d 747, 749 (Tex.Crim.App.1977); *Nelson v. State*, 599 S.W.2d 809, 810 (Tex.Crim. App.1980)—holding that there must be evidence of unlawful entry independent of the missing property; *see* ch. 127, Robbery and Theft, for further discussion of evidentiary rules concerning unexplained possession of stolen property]. The type of evidence necessary to show that the possession is personal and involves a distinct and conscious assertion of right to the property is not unlike that which would be used in showing possession in a drug case.... Thus, if the property is found in a location where there is joint access, this type of possession may not be present [*See Rodriguez v. State*, 549 S.W.2d 747, 749 (Tex.Crim. App.1977)]. Similarly, the evidence is not sufficient under this theory when the defendant was merely a passenger in a vehicle containing the property [*See Jackson v. State*, 645 S.W.2d 303, 306 (Tex.Crim.App.1983)], or was temporarily in possession of a vehicle containing the property several days after the burglary [*See Jordan v. State*, 658 S.W.2d 675, 676 (Tex.App.—Dallas 1983, no pet.)].

The usual rule is that, where unexplained possession of recently stolen property is relied upon, it must be exclusively in the party against whom such possession is sought to be used. That rule only obtains when the case is that no one else but the accused committed the offense. If he and another committed it together, possession by the other party of the goods can be used always, provided that the conspiracy or acting together is shown. *Russell v. State*, 86 Tex.Cr.R. 587, 219 S.W. 835 (1920).

We now examine the evidence of unexplained possession relied upon by the dissent on original submission.

Officer Lockamy testified on a motion to

suppress:[4]

Q: How long after you heard that broadcast did you seek the pink purse laying on that back seat?

A: Three to five minutes.

   *    *    *    *    *    *

Q: Did you ask anybody what the purse was doing in the back car seat?

A: No, sir.

Officer Morris testified:

Q: Now, when you came upon Mr. Markham in the presence of Mr. Lockamy did he make any statements to you at that time?

A: No, sir.

Q: Did you ask any question about the purse?

A: No.

Q: Did any other occupants make any statements about where the purse came from?

A: Not that I recall.

The foregoing is the sum total of evidence supporting any inference that could arise from a failure to explain possession of recently stolen property by any of the co-defendants. Hardly evidence of any conscious assertion of right to the property by any of the occupants of the vehicle, much less by appellant.[5]

## PARTIES

■ In determining whether an individual is a party to an offense and bears criminal responsibility therefor, the court may look to events before, during and after the commission of the offense. *Ex parte Prior*, 540 S.W.2d 723 (Tex.Crim.App.1976).

■ Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. Circumstantial evidence may be sufficient to show that one is a party to the offense. *Westfall v. State*, 375 S.W.2d 911 (Tex. Crim.App.1964).

■ But it is recognized that an agreement to act together as parties in a common design can seldom be proved by words, but that reliance can often be had on the actions of the parties showing an understanding and a common design to do a certain act. *Wygal v. State*, 555 S.W.2d 465, 469 (Tex.Crim.App.1977) quoting from 16 TEX.JUR.2d *Conspiracy* § 58 (1965).

■ In order to render appellant guilty as a party we must find some evidence that appellant, with intent to promote or assist in the offense, solicited, encouraged, directed, aided or attempted to aid his co-passengers in the commission of the offense.

As clearly noted heretofore, there is nothing to place appellant in the company of Phelps and the driver of the Buick until five minutes before he entered the departing vehicle. Moreover, neither State witness could account for a period of ten minutes in which the vehicle was unobserved. A subsequent ten minutes of surveillance produced nothing further other than that appellant was a passenger in a vehicle which later yielded the stolen purse.

---

4. We do not consider this testimony because the trier of fact did not either, but we offer it to point out the nature of evidence offered in support of this inference.

5. Officer Lockamy was the arresting officer. His report, admitted into evidence before the jury, reflects that he personally arrested all three occupants and read them their *Miranda*[*] warnings at the time of arrest.

  Lockamy's testimony before the jury does not touch upon the subject of unexplained possession. The record is, therefore, silent as to whether appellant or any of his co-arrestees were confronted or whether they volunteered an explanation. The record is simply devoid of evidence either way.

  Officer Morris did not confront appellant or the others until Lockamy had placed them under arrest and his further participation is vague.

  We do not know whether any of the co-arrestees tried to explain their possession to Lockamy, but even if they offered no explanation at the time of arrest, this Court is unwilling to indulge in a criminative presumption arising out of a suspect's invocation of rights granted him under *Miranda*.

  * *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant's mere presence at the Shamrock station or his mere presence in the car when arrested cannot make him a party to the offense. Nor would his knowledge that an offense had just been committed. *Meyers v. State*, 665 S.W.2d 590 (Tex.App. —Corpus Christi 1984, pet. ref'd).

In those situations in which one may be guilty as a principal when actually present, the very least that is required is, in addition to physical presence, encouragement by words or agreement to commit the offense; such agreement must be prior to or contemporaneous with the criminal event. *Urtado v. State*, 605 S.W.2d 907 (Tex.Crim. App.1980).

We find no evidence direct or circumstantial showing that appellant solicited, encouraged, directed, aided or attempted to aid anyone with intent to promote or assist the commission of burglary of a vehicle. Nor is there any evidence from which we may infer that. The State simply failed to carry out its burden. *Cf. Beardsley v. State*, 696 S.W.2d 214 (Tex.App.—Dallas 1985), *rev'd*, 738 S.W.2d 681 (Tex.Crim.App. 1987) (en banc); *State v. Mosher*, 270 A.2d 451 (Me.1970); *State v. Watson*, 350 S.W. 2d 763 (Mo.1961); *State v. Maines*, 301 N.C. 669, 273 S.E.2d 289 (1981).

We hold that there is insufficient evidence from which a jury could find beyond a reasonable doubt that appellant participated in the offense charged as a party. The judgment of conviction is reversed and an order of acquittal is entered.

BUTTS, J., dissents without opinion.