# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00576-CR
NO. 03-18-00577-CR

**Anthony Kavanaugh, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NOS. D-1-DC-16-300032 & D-1-DC-15-302387
HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Under two separate indictments, Anthony Kavanaugh was charged with the felony

offenses of theft of property and burglary of a habitation. *See* Tex. Penal Code §§ 30.02(a)-(b),

(c)(2), 31.03(a)-(b), (e)(4), (f)(3). Under the terms of a plea-bargain agreement, Kavanaugh entered

guilty pleas for both charges, and the State recommended that he be placed on community

supervision for ten years. After accepting Kavanaugh's guilty plea, the district court sentenced him

per the terms of the plea agreement and issued its judgments placing him on community supervision.

A few months later, the State filed motions to revoke Kavanaugh's community supervision alleging

that he violated the terms of his community supervision, including by committing subsequent

criminal offenses. After convening a hearing on both motions, the district court found the allegations

to be true, revoked Kavanaugh's community supervision, and sentenced him to ten years'

imprisonment for both offenses. *See id.* §§ 12.33-.34. In four issues on appeal, Kavanaugh challenges the sufficiency of the evidence supporting the revocation grounds that the district court found to be true. We will modify the district court's judgments revoking Kavanaugh's community supervision to correct clerical errors and affirm the district court's judgments as modified.

## BACKGROUND

As set out above, Kavanaugh was charged with theft and burglary of a habitation, and he was placed on community supervision for ten years after pleading guilty to both offenses. Several months after Kavanaugh pleaded guilty, the State filed motions to revoke his community supervision in both cases. In both motions, the State alleged that Kavanaugh failed to report to his community-supervision officer and failed to pay court costs, a crime-stopper fee, and a warrant fee. The motion to revoke pertaining to the theft charge also alleged that Kavanaugh had failed to pay a supervision fee and restitution. Both motions also alleged that Kavanaugh committed the following offenses after being placed on community supervision:

(1) claiming "a lottery prize or a share of a lottery prize by means of fraud, deceit, or misrepresentation, to wit: cashed in stolen lottery tickets";

(2) "intentionally and knowingly enter[ing] a building without the effective consent of [Ali] Abdul . . . , the owner, and therein attempt[ing] to commit and committ[ing] theft of certain property, to wit: Lottery tickets along with assorted tobacco products owned by Abdul";

(3) "unlawfully appropriat[ing] property, to wit: Cash; $20,000 or more but less than $100,000 with the intent to deprive the owner, Seton Dell Children's Hospital, of said property";

(4) "unlawfully appropriat[ing] property, to wit: Cash; $1,500 or more but less than $20,000 with the intent to deprive the owner, Discovery Auto Sales, of said property";

2

(5) "intentionally and knowingly enter[ing] a building not then and there open to the public, without the effective consent of Matthew Bridges, the owner thereof, with the intent to commit theft"; and

(6) "intentionally and knowingly enter[ing] a building without the effective consent of Maricela Barth, the owner thereof, and commit[ting] a theft."

The State later abandoned the revocation allegation involving Discovery Auto Sales and the portion of the allegation pertaining to the hospital specifying the amount of money stolen.

During the revocation proceeding, the State called several witnesses, including Abdul, who was the manager of the CITGO gas station involved in one revocation allegation; Detective Craig Miller, who investigated the offense occurring at the CITGO station; Officer Christopher Chandlar, who arrested Kavanaugh; and Captain Andy Reardon, who worked for the fire department. In addition, surveillance footage from various businesses was admitted into evidence and played for the district court.

At the hearing, various witnesses testified that a Knox Box key was used when committing some of the alleged offenses listed in the motions to revoke. In his testimony, Captain Reardon testified regarding what a Knox Box and a Knox Box key are and explained that some companies install Knox Boxes outside their businesses to allow firefighters to enter the premises when responding to an emergency without having "to do any forcible entry damage." More specifically, Captain Reardon stated that business owners place keys, master keys, key fobs, or any other item needed to gain access to the business inside Knox Box and that firefighters have Knox Box keys inside their fire trucks that allow them to open Knox Boxes. Further, Captain Reardon related that only a limited number of people are given access to Knox Box keys. In addition to

3

Captain Reardon discussing Knox Box keys, Officer Chandlar testified that he arrested Kavanaugh after the offenses alleged in the motions to revoke had been committed and discovered that Kavanaugh had a Knox Box key on his key chain.

Regarding the allegation pertaining to the CITGO gas station, Abdul testified that his security company informed him that the alarm for his store had been set off, that he and his employees were able to ascertain that twenty-five lottery tickets costing fifty dollars each had been taken, and that surveillance footage showed a person gaining access to the gas station by using the contents of the Knox Box found outside of the building and then stealing lottery tickets and cigarettes before leaving the gas station. However, Abdul admitted that he could not tell from the surveillance footage whether the individual was a man or a woman because the individual was covering up his or her body. Moreover, Abdul recalled that no one had permission to be in the store at that time and that the store was closed. During Abdul's testimony, surveillance footage from the store was admitted into evidence and played for the district court. The footage is generally consistent with Abdul's testimony.

After Abdul finished testifying, Detective Miller was called to the stand and explained that he investigated the incident at the gas station. In particular, Detective Miller related that he obtained a list of the lottery tickets that were taken and was able to use that list to find out from the Lottery Commission which tickets had been turned in for cash. He testified that tickets taken from the CITGO station were traded at two stores located more than twenty miles apart and that he was able to obtain surveillance footage from the two stores where the tickets had been traded in. Further, Detective Miller testified that he discovered through his investigation that those tickets

4

were exchanged "a short time" after they were taken. An exhibit made by the Lottery Commission was admitted during Detective Miller's testimony, which showed the precise times and store locations that the stolen tickets were redeemed for cash. The times listed for those exchanges are a few hours after the CITGO burglary.

Moreover, Detective Miller revealed that when reviewing the surveillance footage from both stores around the times that the tickets were traded for cash as specified in the exhibit discussed previously, he was able to observe an individual trade lottery tickets for cash at both stores at the relevant times and that he was later able to identify Kavanaugh as the individual trading tickets at both stores. Additionally, Detective Miller testified that the individual depicted in the recording of the CITGO burglary who took the lottery tickets was wearing the same "brown flip flops" that Kavanaugh was wearing when he exchanged the lottery tickets. During Detective Miller's testimony, the surveillance footage from the two stores was admitted into evidence and played for the district court. The surveillance footage is generally consistent with Detective Miller's testimony and shows the same individual wearing the same clothes and shoes and carrying lottery tickets into the two stores before ultimately trading the tickets for cash. Furthermore, the time stamp for the surveillance footage reveals that the tickets in Kavanaugh's possession were exchanged at approximately the times identified by the Lottery Commission, and that all of the those exchanges occurred less than five hours after the CITGO burglary.

After considering the evidence presented during the hearing, the district court found all of the non-abandoned revocation allegations to be true. Kavanaugh appeals the sufficiency of the evidence supporting the district court's findings regarding the revocation allegations.

5

## STANDARD OF REVIEW

A trial court's decision to revoke community supervision is reviewed under an abuse-of-discretion standard of review. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

"An order revoking community supervision must be supported by a preponderance of the evidence." *Maxey v. State*, 49 S.W.3d 582, 584 (Tex. App.—Waco 2001, pet. ref'd). In this context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Rickels*, 202 S.W.3d at 763-64 (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). When making its determination, a trial court may make reasonable inferences from the evidence. *See id.* at 764. In addition, appellate courts review the evidence presented during the hearing in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). The violation of a single condition of community supervision is sufficient to support a revocation determination. *Jones v. State*, 472 S.W.3d 322, 324 (Tex. App.—Eastland 2015, pet. ref'd) (mem. op.). Accordingly, "to prevail on appeal, the defendant must successfully challenge all of the findings that support the" trial court's "revocation order." *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.). If a defendant does not challenge all of the grounds on which his community supervision was revoked, the trial court's

6

judgment revoking his community supervision should be affirmed. *See Jimenez v. State*, No. 01-06-01101-CR, 2007 WL 3105814, at *1 (Tex. App.—Houston [1st Dist.] Oct. 25, 2007, no pet.) (mem. op., not designated for publication); *Baxter v. State*, 936 S.W.2d 469, 472 (Tex. App.—Fort Worth 1996) (per curiam), *pet. dism'd, improvidently granted*, 960 S.W.2d 82 (Tex. Crim. App. 1998).

## DISCUSSION

### Alleged Offenses

In his first three issues, Kavanaugh asserts that the evidence presented at the revocation proceeding is insufficient to prove that he "claimed a lottery prize by fraud, deceit, or misrepresentation"; that he "was the person who committed the CITGO station burglary"; or that he was the individual who "committed theft from" Seton Dell Children's Hospital.

As an initial matter, we note that the State filed two motions to revoke Kavanaugh's community supervision in each case. The first one filed in each case listed as revocation grounds the three offenses forming the basis for Kavanaugh's first three issues on appeal. The second and later-filed motion in each case contained those same offenses but also alleged two additional criminal offenses as grounds for revocation, and as set out previously, the district court found the allegations regarding all of those criminal offenses to be true and incorporated those findings into its judgments.

In his brief, Kavanaugh does not argue that the district court erred by determining that he committed the two additional offenses listed in the State's second motions to revoke. Because Kavanaugh does not challenge all of the bases upon which the district court revoked his

community supervision, the district court's judgment should be affirmed.[1] *See LaBoy v. State*, No. 03-15-00433-CR, 2016 WL 3974589, at *1, *2 (Tex. App.—Austin July 21, 2016, no pet.) (mem. op., not designated for publication) (overruling challenge to sufficiency of evidence supporting one revocation allegation where defendant "pleaded true to three other allegations"); *Pickett v. State*, No. 10-12-00214-CR, 2013 WL 6923728, at *2 (Tex. App.—Waco Dec. 27, 2013, no pet.) (mem. op., not designated for publication) (affirming trial court's judgment revoking community supervision because defendant "did not challenge all of the grounds on which the trial court revoked [his] community supervision").

Even if Kavanaugh had challenged all of the grounds upon which revocation was granted, we could not conclude that the district court abused its discretion by revoking his community supervision. One of the alleged grounds upon which Kavanaugh's community supervision was revoked was that he burglarized the CITGO gas station. Under the Penal Code, an individual

---

[1] As discussed earlier, those additional allegations specified that Kavanaugh committed an offense by entering a building without the effective consent of Bridges and with the intent to commit theft and by entering a building without the effective consent of Barth and committing theft. We note that during the revocation proceeding, testimony was introduced establishing that an individual went into Austin OB/GYN after hours and took twenty dollars from the office and that the manager at the time was Barth. In addition, surveillance footage was played for the district court and showed an individual wearing sandals entering the building that Austin OB/GYN was located in. Similarly, testimony was presented demonstrating that an individual broke into Click's Billiards while it was closed and that Bridges was the manager at the time. Further, surveillance footage was played for the district court showing an individual wearing brown sandals interact with a box outside the store, enter the building shortly thereafter, and make repeated attempts to open a safe located inside the building before leaving. Additionally, the recording contains clear footage of the individual's face. *Cf. Toliver v. State*, No. 03-17-00448-CR, 2018 WL 2212948, at *2 (Tex. App.—Austin May 15, 2018, pet. ref'd) (mem. op., not designated for publication) (explaining that because defendant "has not challenged these other grounds, and because the record supports them, we cannot conclude that the trial court abused its discretion in revoking [the defendant]'s community supervision and adjudicating his guilt").

commits burglary "if, without the effective consent of the owner, the person . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." Tex. Penal Code § 30.02(a)(3). Further, the Code explains that an individual commits theft "if he unlawfully appropriates property with intent to deprive the owner of property" and that an appropriation is unlawful "if . . . it is without the owner's effective consent." *Id.* § 31.03(a), (b)(1). "'Effective consent' includes consent by a person legally authorized to act for the owner," *id.* § 1.07(a)(19), and "'[o]wner' means a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor," *id.* § 1.07(a)(35)(A); *see also Salas v. State*, 548 S.W.2d 52, 53-54 (Tex. Crim. App. 1977) (noting that hotel manager is owner under burglary statute). Lack of consent may be proved through direct or circumstantial evidence. *See Alex v. State*, 483 S.W.3d 226, 229 (Tex. App.—Texarkana 2016, pet. ref'd).

On appeal, Kavanaugh contends that the evidence at the hearing is insufficient. First, Kavanaugh notes that there is a "well-settled rule that a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary," *see Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007), but he contends that this type of inference cannot be made in this case because the evidence did not show that the tickets he cashed at the two stores were the same tickets taken from the CITGO station. In other words, Kavanaugh urges that although the evidence placed him at the two stores where the stolen tickets were traded for cash shortly after the burglary at the CITGO station, the evidence did not establish that he ever possessed the stolen tickets. *Cf. Plata v. State*, 875 S.W.2d 344, 346-47 (Tex. App.—Corpus Christi 1994) (determining that evidence was insufficient to support conviction

9

for theft of $20,000 or more even though evidence showed defendant had "'some money' in a paper sack," in part, because there was no evidence regarding "when, where, or how appellant procured money," because no evidence established how much money was in sack, because no evidence placed defendant at scene of crime, and because no evidence established that defendant possessed "money or other items identified as taken in the theft"), *aff'd*, 926 S.W.2d 300 (Tex. Crim. App. 1996).

Similarly, Kavanaugh argues that the inference should not be made in this case even if the evidence supports an inference that he possessed the stolen tickets because no evidence was presented showing that his possession of the lottery tickets a few hours after they were stolen was unexplained. Stated differently, Kavanaugh urges that no evidence was presented establishing that he was given an opportunity to explain how he came to possess the lottery tickets but refused to provide an explanation or that he provided an explanation that was proven to be false. *See Hood v. State*, 860 S.W.2d 931, 937 (Tex. App.—Texarkana 1993, no pet.) (noting that for inference to apply "the State must lay the predicate that [the defendant] gave no explanation or gave a false explanation at the time of his arrest or at the time that he was found with the property" and concluding that "no inference of guilt arose" because "there was no evidence concerning his explanation of possession or the absence thereof at the time of his arrest" and because there was "no other evidence that show[ed] that [the defendant] committed the offense of burglary"); *Markham v. State*, 761 S.W.2d 553, 561, 562 (Tex. App.—San Antonio 1988, no pet.) (finding evidence to be insufficient to support conviction, in part, because officers testified that they did not ask defendant why stolen property was in car and that defendant did not make any statements regarding stolen property when police officers interacted with him).

10

Finally, Kavanaugh contends that the evidence is insufficient to support his conviction because although the individual depicted on the surveillance footage from the CITGO station was wearing shoes that were similar to the ones that he was seen wearing at the two stores after the CITGO burglary, there was nothing distinctive about the shoes that could serve as a basis for establishing his identity as the person responsible for the CITGO burglary. *Cf. Espinoza v. State*, 662 S.W.2d 745, 747 (Tex. App.—Houston [14th Dist.] 1983) (determining that extraneous offense evidence should not have been introduced because alleged similarities, including robbers wearing "similar clothing," were "not so distinctive to be the appellants' 'signature'"), *pet. dism'd, improvidently granted*, 738 S.W.2d 669 (Tex. Crim. App. 1987).

Although Kavanaugh correctly notes that no testimony was presented directly stating that he possessed the stolen lottery tickets and traded them for cash at the two stores; and, although he contends that the videos showing him wearing sandals were insufficient to identify him as the person wearing sandals during the CITGO burglary, evidence beyond the similarity of his shoes to those worn by the person depicted on the CITGO security footage was presented during the hearing providing a basis for inferring that Kavanaugh possessed tickets taken from the CITGO station and linking him to the burglary at the CITGO station. As set out earlier, during the revocation proceeding, evidence was introduced establishing that an individual used a Knox Box key to enter the CITGO station when the gas station was closed, that Knox Box keys are unique items that are not generally available to the public, and that the individual took lottery tickets from inside the store. In addition, evidence was presented showing the exact time that lottery tickets taken from the CITGO station were traded for cash, revealing that the trades occurred within a few hours of the

11

CITGO burglary, identifying the two stores where the trades occurred, indicating that those stores were more than twenty miles apart, establishing that Kavanaugh was present at both of those stores within a few hours of the CITGO burglary, and demonstrating that Kavanaugh traded lottery tickets for cash at those two stores at the approximate times at which the Lottery Commission's records showed that the stolen tickets were traded and was later arrested while carrying a Knox Box key. In light of all of the evidence, we believe that the district court could have reasonably inferred by a preponderance of the evidence that Kavanaugh was in possession of lottery tickets stolen from the CITGO station and traded those tickets for cash shortly after the CITGO burglary, and that Kavanaugh was responsible for the CITGO burglary.

Moreover, regardless of whether the inference of guilt stemming from unexplained possession of stolen property could apply in the circumstances of this case, *see Liggins v. State*, Nos. 10-14-00314—00315-CR, 2015 WL 1876183, at *2 (Tex. App.—Waco Apr. 23, 2015, no pet.) (mem. op., not designated for publication) (affirming revocation and discussing inference that "a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary" without specifying that proof of no explanation or false explanation was needed), it is unnecessary to rely on that inference in this case because, as set out above, other evidence linked Kavanaugh to the burglary besides his possession of recently stolen property, *cf. Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (on reh'g) (setting out evidence of guilt and explaining that because there was sufficient evidence of defendant's guilt, it was "unnecessary to apply the presumption of guilt arising from the unexplained possession of recently stolen property to sustain the conviction").

Viewing the evidence in the light most favorable to the district court's ruling and considering the reasonable inferences that the district court was free to make from that evidence, we conclude that the district court did not abuse its discretion by finding that the State proved by a preponderance of the evidence that Kavanaugh violated the terms of his community supervision by burglarizing the CITGO gas station. Having determined that one of the alleged grounds sufficiently supported Kavanaugh's revocation, we need not address the sufficiency of the evidence supporting the other revocation grounds, including the offense occurring at Seton Dell Children's Hospital, that the district court found to be true.

For all of these reasons, we overrule Kavanaugh's first, second, and third issues on appeal.

**Technical Violations**

In his final issue on appeal, Kavanaugh contends that the evidence is insufficient to support the technical violations alleged in the State's motion to revoke and that the district court's inclusion of the technical violations in its judgments is a clerical error. Those technical violations alleged that Kavanaugh failed to report to his community-supervision officer and failed to pay court costs, a crime-stopper fee, a warrant fee, a supervision fee, and restitution. Kavanaugh requests that the district court's judgments be modified to delete the findings regarding the technical violations. In its appellee's brief, the State agrees that the evidence is insufficient to support the technical violations and "does not oppose [Kavanaugh]'s request that the judgments be modified."

During the revocation hearing, no testimony or other evidence was presented regarding any of the alleged technical violations of Kavanaugh's community supervision. Moreover,

13

at the end of the revocation proceeding, the district court acknowledged "that the State failed to offer any evidence about the technical violations."

This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *see also Mims v. State*, Nos. 05-17-01108—01109-CR, 2018 WL 4784571, at *3 (Tex. App.—Dallas Oct. 4, 2018, no pet.) (mem. op., not designated for publication) (noting that State abandoned certain revocation allegations and "presented no evidence" regarding those allegations and modifying judgment "to correctly reflect the trial court's finding" regarding which conditions of community supervision were violated); *Baxter*, 936 S.W.2d at 472-73 (observing that State abandoned revocation allegation during hearing and reforming "the judgment to delete the finding regarding" that allegation). Accordingly, we sustain Kavanaugh's fourth issue on appeal. We modify both of the district court's judgments to remove the following language:

> failed to report to the Supervision Officer on 06/14/17, 09/22/17, and 10/13/17;
>
> failed to pay Court Costs and is delinquent $105.00;
>
> failed to pay Crime Stopper Fee and is delinquent $30.00; [and]
>
> failed to pay Warrant Fee and is delinquent $50.00.

We additionally modify the judgment pertaining to the theft offense to remove the following language: "failed to pay Supervision Fee and is delinquent $480.00" and "failed to pay Restitution Fee and is delinquent $350.00."

In addition, although Kavanaugh does not request any more modifications, our review of the record in this case reveals another error in the district court's judgments. Specifically,

14

after listing the allegation regarding Seton Dell Children's Hospital, the district court wrote "ABANDON" at the end of that finding. However, during the hearing, the State indicated that it was not abandoning the entirety of the allegation and was instead only abandoning the portion specifying the amount of money allegedly taken. Accordingly, we modify the portions of the judgments pertaining to the allegation about the hospital to remove the language "$20,000 or more but less than $100,000" and remove the word "ABANDON" at the end of this finding.

## CONCLUSION

Having modified the district court's judgments in the manner specified above, we affirm, as modified, the district court's judgments revoking Kavanaugh's community supervision.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Modified and, as Modified, Affirmed

Filed: April 18, 2019

Do Not Publish

15