Asa Lynn ENGLAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 3-85-243-CR.

Court of Appeals of Texas,
Austin.

April 1, 1987.

Michael L. Brandes, Austin, for appellant.

Ronald Earle, Dist. Atty., Laurie Booras, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, GAMMAGE and CARROLL, JJ.

GAMMAGE, Justice.

Asa Lynn England was convicted by the district court sitting without a jury of burglary of a habitation and sentenced to six years in the Texas Department of Corrections, probated. England brings one point of error by which he argues the evidence is insufficient to support the conviction. We agree and will reverse the judgment.

According to the testimony of Barbara Gamboa, the complaining witness, she entered her apartment around noon on February 20, 1985, and discovered her stereo and jewelry were missing. She then called the police and waited outside the apartment until they arrived. The apartment's doors and windows were locked and the police found no sign of forcible entry. The next day Gamboa noticed particles of dust on the clothes in her bedroom closet, causing her to suspect that the burglar had entered her apartment through the closet ceiling leading to the attic.

Gamboa testified that she then went next door to England's apartment and told him of her suspicion that the burglar had entered through the attic and that the police would be coming to "check things out." She stated that England seemed nervous. Gamboa returned to her apartment where, after ten or fifteen minutes, she heard loud noises coming from "upstairs." She went back to England's apartment and asked if he had been upstairs in the attic. England denied that he had, whereupon Gamboa returned to her apartment and called the

police. Before the police arrived, England came to Gamboa's apartment and told her he had found her stereo in his attic and that he was afraid the police would think he had stolen the property. The police arrived, discovered a hole in a sheetrock panel separating England's and Gamboa's attic space, and found the stolen stereo equipment in England's area of the attic. Gamboa's jewelry was not found.

Gamboa continued to testify that England denied having taken her property and that he suggested someone from outside the complex could have entered his apartment through a window which had been broken. During the next several days England repeatedly asked Gamboa not to press charges. He continued to deny taking the property and finally told Gamboa he suspected his roommate had taken the property. She agreed not to press charges if the jewelry was returned.

Later that day, Gamboa said, she threw away a crumpled piece of foil she found on her car. When she returned to her apartment, England came by and asked if she had found her jewelry. She told him she had not, and England left. Gamboa stated, finally, that when she returned to her car about fifteen minutes later, she found the same piece of foil on her car, unwrapped it and discovered her missing jewelry.

■ There is no direct evidence linking England to the burglary. Evidence of burglary along with evidence that the accused was in possession of the stolen property can, however, combine to create an inference of burglary with intent to commit theft. *Rodriguez v. State,* 549 S.W.2d 747 (Tex.Cr.App.1977). But, in order to warrant such an inference the possession must be personal, recent, unexplained, and must involve a distinct and conscious assertion of right to the stolen property by the accused. *Id.* at 749.

England's possession of the stolen property was unquestionably recent, but he argues his possession was neither personal nor unexplained. We agree. We also find the State failed to prove that England made a conscious assertion of right to the stolen property.

According to Gamboa's testimony, England claimed that his roommate committed the burglary. England did not testify at trial, but his explanation for the crime was elicited from the complaining witness on cross-examination:

ATTORNEY: Okay. Also, he did have a roommate at that time, did he not, Jimmy Uri (phon.) or something like that?

GAMBOA: I really don't know. I know that he said that he did, and there were several people at the house. I didn't even know for a fact that he lived there until after this incident took place.

ATTORNEY: So, you can confirm the fact that several people besides him lived in that apartment?

GAMBOA: Yeah, pretty much, or at least were there.

ATTORNEY: Okay. So, other people had access to his apartment?

GAMBOA: Yes.

. . . . .

ATTORNEY: He told you he knew who did it; is that right?

GAMBOA: Exactly.

ATTORNEY: Over here on an affidavit attached to this file some police officer has said that he expressed to you he thought his roommate had done it, and he was going to try to get the stuff back. He told you that, didn't he?

GAMBOA: Yeah.

■ An inference of guilt of burglary based on the accused's *personal* possession of stolen goods has not been raised where the stolen property was found in a place where others had an equal right and facility of access. *Id.; McKnight v. State,* 399 S.W.2d 552 (Tex.Cr.App.1966); *Prather v. State,* 81 S.W.2d 528 (Tex.Cr.App.1935); *See,* Annot., *What Amounts to "Exclusive" Possession of Stolen Goods to Support Inference of Burglary or Other Felonious Taking,* 51 A.L.R.3d 727 § 5 (1973). Here, the defense elicited unrebutted testimony from the complaining witness that other persons besides England had access to the apartment attic where the stolen property was found. This imposed upon the State the burden to either negate pos-

session by others with access or produce evidence of joint enterprise or conspiracy between the accused and others with access. The State failed to meet this burden.

The State also failed to show that England's possession of the stolen property was unexplained. To the contrary, according to Gamboa, England asserted he believed his roommate stole the property and hid it in the attic. Even though Gamboa claims England behaved suspiciously, no part of her version of the facts conflicts with his explanation. His odd or "nervous" behavior can be explained consistent with his presumed innocence. We are unable to accept the State's unsupported argument that England's possession of the stolen property was personal and unexplained.

The State has furthermore failed to show that England made a conscious assertion of right to the property. There is no evidence, other than the fact that the property was found in England's attic, that England made a "conscious assertion of right" to Gamboa's stereo equipment. According to Gamboa, England told her before the police arrived that he had *found* her stereo, and he surrendered the property shortly thereafter.

The State contends that by negotiating with Gamboa for return of the stolen jewelry in exchange for her promise to not prosecute, and by then physically returning it to Gamboa, England exercised control over and made a conscious assertion of right to the jewelry. But, according to Gamboa's testimony, England never promised to return the jewelry in exchange for her promise to not prosecute; he said he would try to get the jewelry back from the person who took it. There is, furthermore, no direct evidence that England placed the foil containing the jewelry on Gamboa's car. While this may be a reasonable inference from the sequence of events, it is just as reasonable to infer that England persuaded his roommate to return the jewelry. We find the evidence insufficient to prove that England made a conscious assertion of right to the property stolen from Gamboa.

The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the verdict, a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, n. 12, 99 S.Ct. 2781, 2789, n. 12, 61 L.Ed.2d 560 (1979). Circumstantial evidence is sufficient to support a conviction only if the proven facts support a reasonable inference that the accused committed the crime *and* exclude to a moral certainty any inference consistent with his innocence. *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983). The State failed to produce any evidence negating England's assertion to Gamboa that he had a roommate and Gamboa's own testimony that there were others with access to the apartment and the attic where the stolen property was found. That the roommate or another with access to the premises committed the burglary is a reasonable inference consistent with England's innocence under these circumstances, and one which has not been excluded to a moral certainty by the evidence.

England's point of error is sustained. The judgment of the district court is reversed and reformed to reflect an acquittal.