John **VASQUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–90–00125–CR.

Court of Appeals of Texas, Dallas.

Feb. 8, 1991.

Daniel F. Solis, Dallas, for appellant.

Carolyn Fitzgerald Levin, Dallas, for appellee.

Before STEWART, BURNETT and MALONEY, JJ.

## OPINION

BURNETT, Justice.

John Vasquez appeals his conviction of burglary of a habitation. After a jury trial, the jury assessed punishment, enhanced by two prior convictions, at forty years' confinement. In three points of error, Vasquez argues that (1) the evidence was insufficient to support his conviction, (2) the trial court erred when it found that he voluntarily and freely gave his consent to search, and (3) the trial court erred when it allowed the admission of evidence of extraneous offenses. We overrule Vasquez's points of error and affirm the trial court's judgment.

## FACTS

At trial, the complainant testified that on September 18, 1989, someone broke into his house in Oak Cliff between 7:00 a.m. and 4:00 p.m. He notified the police that a television, microwave oven, VCR, typewriter, and various identification cards were missing. The complainant stated that he had not given anyone permission to enter his house and take any of the missing items. Finally, he described how he recovered the television from a pawnshop.

Dallas Police Officer David Carpenter testified that, on the morning of September 18, 1989, he set up surveillance on Vasquez at his apartment complex. This surveillance site was located a block and a half from the complainant's home. From his position, Officer Carpenter identified an unknown Latin male, carrying a microwave oven, enter the apartment complex. A few minutes later, Officer Carpenter observed Vasquez and an unknown black male run from the apartment complex and, after approximately forty seconds, run back into the apartment complex. The officer then received instructions to get in his patrol car and proceed to another location, where he observed Vasquez in the back seat of a white over red Ford Granada. Officer Carpenter radioed this information to Detective Stephen W. Conover, and both policemen began following the vehicle. They followed the Granada to a pawnshop.

Dallas Police Officer Robert L. Massingill testified that, on the morning of September 18, 1989, while on surveillance at an apartment complex, he observed an unknown Latin male carrying a microwave oven walk up to the second floor of the apartments and enter apartment 214. He relayed this information to other members of the surveillance team. He also observed Vasquez and an unknown black male enter and leave that same apartment several times over the next few hours. On one of these trips back to the apartment, Officer Massingill saw the black male carrying a television and Vasquez walking in front of him. At approximately 12:30 p.m., he observed Vasquez and the black male who was carrying the television leave the apartment, walk down the stairs, and place the television between them in the back seat of a white over red Granada. He relayed this information to the other members of the team.

Detective Conover testified that, on the morning of September 18, 1979, after receiving information from fellow officers, he followed a white over red Granada to a pawnshop. He observed the black male

wandering around the pawnshop and Vasquez at the counter with the television set. It appeared that Vasquez was talking to the man behind the counter and signing some papers. The two men left the pawnshop after ten to fifteen minutes. After they left the pawnshop on foot, Detective Conover called for a patrol officer to stop the pair, to ask them for identification, and to find out if they had any more stolen property on them. Detective Conover then went into the pawnshop to question the man behind the counter. The man responded affirmatively when asked if a black male and a Mexican male had just pawned a television. The man showed the officer the pawn ticket and the television. Vasquez's name was not on the ticket. The officers who stopped Vasquez and the black male radioed that the pair had identification and that the officers had recovered some property. The officers were instructed to release the pair.

On September 21, 1989, at 7:30 p.m., Detective Conover and five other officers went to Vasquez's apartment to serve him with an arrest warrant. He approached Vasquez from downstairs and had two other officers approach from a different direction in case Vasquez fled. All of the officers had their weapons drawn. Detective Conover told Vasquez he was under arrest and had him lie down on the landing; one of the officers handcuffed Vasquez's hands behind his back. When Vasquez was handcuffed, all of the officers put away their weapons. Detective Conover then read Vasquez his Miranda warnings. He then asked Vasquez if he could look in his apartment, and Vasquez responded, "Yeah." Three or four police officers were present at the time. After finding the front door locked, Detective Conover asked Vasquez if he had keys for it, to which Vasquez responded, "No, just kick the [expletive] open, I don't care." Detective Conover picked the lock and the officers entered and searched the apartment. One of the officers found a typewriter, which matched the complainant's description, behind a piece of furniture. When asked about the typewriter, Vasquez denied knowing anything about it.

David Ramirez, the manager of the pawnshop, testified that, on September 18, 1989, two men came in with a television. He stated that the black man carried the television and placed it on the counter. Ramirez then talked with Vasquez about the price. They agreed on $50, and Vasquez presented identification and filled out the required paperwork. Vasquez presented identification for and signed as Juan Paniagua and certified that the information on the ticket was true and complete and that he had the right of possession to sell the property. Vasquez picked up the identification and the $50 off of the counter and handed the money to the black man as they left the pawnshop.

Dallas Police Officer Danny W. Green testified that, on September 18, 1989, in response to a radio call from Sergeant Conover, he stopped Vasquez and a black man. He asked both men for identification. Vasquez had no identification on him and the black man produced four pieces of identification some of which contained the names of the complainant or his wife.

### SUFFICIENCY OF THE EVIDENCE

█ In his first point of error, Vasquez contends that the trial court erred when it refused to grant his motion for instructed verdict. He argues that the State failed to meet its burden of proof because the evidence was insufficient to show that possession was personal as to Vasquez and that the possession involved a distinct and conscious assertion of a right to the property by Vasquez.

█ A challenge to the trial court's ruling on a motion for an instructed verdict equates to a challenge to a sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex. Crim.App.1990). When determining whether the evidence is sufficient to support the conviction, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Marroquin v. State,* 746 S.W.2d 747, 750

(Tex.Crim.App.1988); *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1009 (1985). When reviewing the sufficiency of circumstantial evidence, the court considers whether the evidence supports a reasonable hypothesis other than the defendant's guilt. *Butler v. State*, 769 S.W.2d 234, 238 n. 1 (Tex.Crim. App.1989). However, the State is not required to prove to a moral certainty that the circumstances presented actually exclude every hypothesis that another person may have committed the criminal act. It must only exclude every reasonable hypothesis raised by the evidence that tends to exculpate the defendant. If the combined and cumulative force of all the incriminating circumstances warrant a conclusion of guilt, every fact need not point directly and independently to the defendant's guilt. *Brandley v. State*, 691 S.W.2d 699, 703 (Tex.Crim.App.1985).

■■■ To sustain a conviction for burglary, the evidence must show that the defendant possessed recently stolen property and that possession (1) was personal to the defendant, (2) was recent, (3) was unexplained, and (4) involved a distinct and conscious assertion of a right to the property by the defendant. *Rodriguez v. State*, 549 S.W.2d 747, 749 (Tex.Crim.App.1977); *Durant v. State*, 688 S.W.2d 265, 267 (Tex. App.—Fort Worth 1985, pet. ref'd). The evidence does not raise an inference of guilt of burglary based on the defendant's personal possession of stolen goods where the police find the stolen property in a place where others have an equal right and facility of access. *England v. State*, 727 S.W.2d 810, 811 (Tex.App.—Austin 1987, no pet.). Section 7.01 of the Texas Penal Code provides in pertinent part that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX.PENAL CODE ANN. § 7.01(a) (Vernon 1974). Further, section 7.02 of the Texas Penal Code provides in pertinent part:

> A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). In determining whether an individual is a party to an offense and bears criminal responsibility, the court may look to events before, during, and after the commission of the offense. The court may infer participation in an enterprise from the circumstances, and it need not be shown by direct evidence. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987).

Relying on *England*, Vasquez apparently argues that the State failed to negate possession of the typewriter by others with access to apartment 214 or to produce evidence of joint enterprise or conspiracy between him and others with access. *England*, 727 S.W.2d at 811–12. Right of possession to the typewriter bears little significance to the overall evidence presented. A review of the evidence in the light most favorable to the verdict shows that on the day of the reported burglary: (1) Vasquez accompanied and opened the door for the black man when he carried the television from around the area of the complainant's house to a nearby apartment; (2) Vasquez later accompanied this same man to the pawnshop; (3) under an assumed name, Vasquez negotiated the price of the television with the pawnshop manager; (4) Vasquez represented that the information given on the pawn ticket was true and correct and that he possessed the right to sell the television; and (5) Vasquez accepted the money proffered by the pawnshop manager and later handed it to the black man. From the combined and cumulative force of these circumstances, the jury could find the elements of the crime beyond a reasonable doubt. We overrule Vasquez's first point of error.

## CONSENT TO SEARCH

■■■ In his second point of error, Vasquez contends that the trial court erred when it found that he voluntarily and freely consented to the search of his apartment. He apparently argues that his con-

sent to search was involuntary because it resulted from police coercion.

A search conducted pursuant to the consent of a person authorized to give it is a specifically established exception to the requirements of both a warrant and probable cause. *Juarez v. State*, 758 S.W.2d 772, 775 (Tex.Crim.App.1988). An oral consent is sufficient. *Montoya v. State*, 744 S.W.2d 15, 25 (Tex.Crim.App. 1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). However, the State must present clear and convincing evidence that the consent was freely and voluntarily given, positive and unequivocal, and without duress or coercion, actual or implied. To discharge its burden, the State must show more than acquiescence to a claim of lawful authority. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Crim.App. 1985). The court determines the voluntariness of the search from the totality of the circumstances. *Gregg v. State*, 667 S.W.2d 125, 128 (Tex.Crim.App.1984).

The fact of arrest alone does not preclude a free and voluntary consent to search from being given. *United States v. Watson*, 423 U.S. 411, 424–25, 96 S.Ct. 820, 828–29, 46 L.Ed.2d 598 (1975); *Paulus v. State*, 633 S.W.2d 827, 851 (Tex.Crim. App.1981). Although the fact of arrest is a factor militating against a finding of consent because after arrest a subject is more susceptible to possible duress or coercion, the question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain the consent. The absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent. On appeal, the court should not disturb the trial court's finding of voluntariness unless it appears that the defendant's consent was physically or mentally coerced by the actions of the arresting officers that went beyond the normal duress inherent in any arrest. *See United States v. Jones*, 475 F.2d 723, 730 (5th Cir.), *cert. denied*, 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). Another factor that weighs in favor of sustaining the trial court's conclusion as to voluntariness is whether the police officers gave the defendant his *Miranda* warnings prior to the time he made his statements. *Lackey v. State*, 638 S.W.2d 439, 451 (Tex.Crim.App. 1982).

In the present case, Vasquez alleges that his consent was not freely and voluntarily given because six police officers were present with their weapons drawn. Vasquez mischaracterizes the situation. Although six officers were present at the scene of the arrest, Detective Conover testified that only three officers were on the landing with Vasquez. *Compare Jones*, 475 F.2d at 730 (although at least five to seven FBI agents present at time of arrest, consent found to be voluntarily given). Further, once the arrest was made and Vasquez was handcuffed, all weapons were put away. Detective Conover then read Vasquez his *Miranda* warnings, and Vasquez indicated that he understood those warnings. *Compare Gregg*, 667 S.W.2d at 128 (because *Miranda* warnings given two-and-one-half hours after the search took place, consent found not to have been given voluntarily). Then Detective Conover asked Vasquez if he could search his apartment, to which he responded, "Yeah." There is no evidence in the record of intimidation, threats, abuse (physical or psychological), or other coercion beyond the normal duress inherent in any arrest. Because a review of the totality of the circumstances indicates no duress or coercion beyond that normally inherent in any arrest, the trial court did not err when it found that Vasquez gave his consent freely and voluntarily. We overrule Vasquez's second point of error.

## EXTRANEOUS OFFENSES

In his third point of error, Vasquez contends that the trial court erred when it refused to grant him a mistrial. He argues that the trial court erroneously allowed the admission of evidence of extraneous offenses. He further argues that the trial court's instruction to the jury failed to cure the error.

An accused may not be tried for some collateral crime or for being a criminal generally. *Rubio v. State*, 607 S.W.2d 498, 499 (Tex.Crim.App.1980). However, not every improper response referring to an extraneous offense requires reversal. Except in extreme cases, if the trial court sustains a timely objection and instructs the jury to disregard, the error is cured. *Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim.App.1985). Therefore, testimony referring to or implying extraneous offenses allegedly committed by the defendant may be rendered harmless by the trial court's instruction to disregard. *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim.App.1984).

Vasquez objected to the following testimony by Officer Carpenter:

Q. Can you say to the jury what the deployment unit is?

A. We work in plainclothes, and along with serving felony warrants we also try to surveil active and repeat offenders, hoping to gain criminal cases against career offenders.

The trial court sustained the objection, instructed the jury to disregard the part of the witness's testimony where he recited his job description, and overruled Vasquez's motion for a mistrial. Any error resulting from the testimony complained of was rendered harmless when the trial court sustained the objection and instructed the jury to disregard. *See Hodge v. State*, 631 S.W.2d 754, 757 (Tex.Crim.App.1982); *Reyes v. State*, 630 S.W.2d 822, 823 (Tex. App.—Houston [1st Dist.] 1982, no pet.). We overrule Vasquez's third point of error.

We affirm the trial court's judgment.