**Tony Joe HOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–93–0016–CR.**

Court of Appeals of Texas, Texarkana.

Aug. 10, 1993.

---

Deborah J. Race, Tyler, for appellant.

Richard Townsend, Daingerfield, Randy Lee, Special Prosecutor, Linden, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Tony Joe Hood appeals from a conviction for burglary of a habitation. The jury returned a verdict of guilty and assessed punishment at sixty years' imprisonment.

In a single point of error, Hood attacks the legal sufficiency of the evidence to support his conviction. Specifically, Hood contends that no evidence exists to prove (1) that he entered the habitation that the State alleged he burgled, (2) that he intended to commit theft, or (3) that he ever had possession of any of the stolen property.

 In reviewing the legal sufficiency of the evidence to support the verdict, an appeals court should consider all of the evidence in the light most favorable to the verdict. *Geesa v. State*, 820 S.W.2d 154, 160 (Tex.Crim.App.1991). Under this framework, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Burglarious entry can be proven by circumstantial evidence. *Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex.Crim.App. [Panel Op.] 1978). In a circumstantial evidence case, every fact need not point directly and independently to the defendant's guilt; it is enough if the jury's conclusion is warranted by the cumulative force of all the circumstances. *Russell v. State*, 665 S.W.2d 771, 776 (Tex.Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). The court should measure the suffi-

ciency of the evidence against the jury charge. *Geesa*, 820 S.W.2d at 159.

 The trial court instructed the jury: [I]f you find from the evidence beyond a reasonable doubt that on or about the 27th day of November, 1991 in Morris County, Texas, the defendant, Tony Joe Hood, did enter a building then and there occupied and used as a habitation by Richard R. Morrison, Jr., without the effective consent of the owner, with the intent then and there to commit the offense of theft therein, then you will find the defendant guilty as charged.

The trial court did not instruct the jury on the law of parties, and therefore Hood could not be convicted under the law of parties. *See Walker v. State*, 823 S.W.2d 247, 248 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).[1] The jury found Hood guilty as charged.

Some of the facts in the case are undisputed. Richard and Imogene Morrison owned a home in Daingerfield, Texas, and they employed Willy and Virginia Simmons to help take care of the home. On November 26, 1991, the Morrisons left home for a few days and, when they returned on November 30, they found that their home had been burglarized. A window in a french door leading into the utility room had been broken, as had a window in a spare bedroom, and someone had broken a window pane in the master bedroom and bent the window's metal frame. Several items were taken from the home, including some jewelry, a watch, and a .25 caliber pistol.

When the police arrived they discovered shoe prints on the living room carpet and a fingerprint on the outside of the spare bedroom just below the broken window pane. Richard Morrison told the police that he believed that the Simmonses' daughter, Linda, probably stole the items. Police Chief Scott Sartain recovered the stolen weapon around December 3, 1991, from Bruce Roberson, and the police later recovered some of the stolen jewelry from Michelle Jones.

1. It is not necessary that the indictment allege that Hood acted as a party in order for the trial court to apply the law of parties by so instructing the jury on the law of parties. *See Smith v. State*,

768 S.W.2d 478 (Tex.App.–Houston [1st Dist.] 1989, no writ); *Cantu v. State*, 715 S.W.2d 717 (Tex.App.–Houston [1st Dist.] 1986, pet. ref'd).

The police matched a pair of Linda Simmons's shoes to the shoe prints found in the Morrisons' living room, and they arrested Linda and charged her with burglarizing the Morrison home. She pleaded guilty.

The areas of dispute concern whether Hood participated in the burglary. Linda Simmons testified that she was Hood's girlfriend and had lived with him off and on, that she committed the burglary herself, and that she individually and alone disposed of the stolen items.

Danny Woodard testified that he worked with Hood at the Morrisons' home cleaning out gutters and moving supplies, but his testimony did not specify when he did so. During cross-examination, Woodard expressed uncertainty as to when he had worked with Hood at the Morrisons' home.

■ The State's case rests primarily on two pieces of evidence: the fingerprint taken outside the home and the testimony concerning Hood's involvement in the sale of the stolen items. Both Hood and the State place much emphasis on the meaning of the fingerprint found below the broken window pane outside the spare bedroom.

In *Phelps v. State*, the Court of Criminal appeals stated that the fingerprints of a defendant, which necessarily must have been made at the time of the burglary, are sufficient evidence to sustain a conviction even without further evidence of identification. 594 S.W.2d 434, 436 (Tex.Crim.App. [Panel Op.] 1980), *citing Dues v. State*, 456 S.W.2d 116 (Tex.Crim.App.1970). The fingerprints in the *Phelps* case, however, were found inside the home that the defendant was accused of burglarizing. *Phelps*, 594 S.W.2d at 435. In *Jones v. State*, the court utilized the same standard as in the *Phelps* opinion, but in *Jones* the fingerprints were found on a screen that the burglar removed from a window in order to gain entry into the home. 825 S.W.2d 529, 531 (Tex.App.–Fort Worth 1992, pet. ref'd). The court in *Jones* held that the sum of the evidence, including the fingerprints from the screen, was sufficient to support the verdict. *Id.* The court did not use the fingerprints by themselves to affirm the conviction.

In the present case, Rachel Riffe of the Texas Department of Public Safety Crime Lab testified that she managed to match seven points on the fingerprint taken at the scene to one taken from Hood, and she further testified that seven points are sufficient to make an identification. She also stated that, although it is impossible to date a fingerprint, rain and heat can cause a print to deteriorate, possibly in less than a month.

In *Walker v. State*, the Court held that, absent a proper charge on the law of parties, the circumstantial evidence relied on by the State was not sufficient to support the verdict. 823 S.W.2d at 249. The main piece of evidence relied on by the State was a palm print found on a television taken in a burglary. The print was consistent with the defendant's having carried the television. The defendant had also made a statement pinpointing geographically the location of the burglarized store before the police told him which store he was accused of burglarizing. The Court stated that such circumstantial evidence did not rule out the possibility that the defendant only aided the actual burglar by carrying the television from the scene of the crime to the place where the police found it. The Court in *Walker*, however, utilized the pre-*Geesa* standard requiring that circumstantial evidence must be sufficient to exclude all reasonable hypotheses except the defendant's guilt. Therefore, although instructional, *Walker* cannot be considered controlling in regard to post-*Geesa* cases.

The fingerprint does not demonstrate that Hood actually entered the home, and therefore, although the fingerprint does provide some evidence that Hood may have been at the home at some time, it does not, in itself, establish that he committed the burglary.

■ The State also produced testimony from Richard Morrison that, in his opinion, Linda Simmons did not have the strength to bend the metal frame around the window in the master bedroom. The State contends that this testimony, viewed in conjunction with the fingerprint, further suggests Hood's involvement in the burglary. This testimony, although certainly not direct evidence of Hood's guilt, does suggest that Linda did not act alone in the burglary. It does not, how-

ever, place Hood inside the home. The lone fingerprint of Hood's found by the police was not found in the master bedroom, nor does the record contain any evidence that it was Hood who bent the frame. The fingerprint evidence and Morrison's appraisal of Simmons's strength are not, by themselves, sufficient to support the verdict.

■ The State next contends that Hood's control and management of the stolen property, as evidenced by his involvement in selling items taken in the burglary, demonstrates that he had constructive possession of the items soon after the burglary occurred. When there is independent evidence of a burglary, the unexplained possession of recently stolen property can constitute sufficient evidence of guilt. *Garza v. State*, 841 S.W.2d 19, 22 (Tex.App.–Dallas 1992, no pet.). The *Garza* opinion does not require that the State produce independent evidence that the defendant committed the burglary when the defendant is found in recent, unexplained possession of property taken in the burglary.

In the present case, the fact of the burglary is well established by independent evidence. Richard Morrison testified regarding the broken windows and other indications that someone had been inside the home without his permission, and he testified that several items of jewelry, a watch, and a pistol were missing. Police officer Wayne Bullard testified that he examined the house after the Morrisons reported the burglary, and Bullard concluded that someone had made several attempts at entering the house and eventually did gain entry. The testimony given by these two witnesses constitutes independent evidence that a burglary occurred at the Morrison home.

■ The question now becomes whether there is sufficient evidence in the record to support a conclusion that Hood had unexplained possession of the stolen property soon after the burglary. In order to warrant an inference of guilt from the evidence of possession alone, such possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious assertion of the right to the property

by the defendant. *Jackson v. State*, 645 S.W.2d 303, 306 (Tex.Crim.App.1983).

■ The State introduced evidence regarding Hood's involvement in disposing of the stolen property. Bruce Roberson, from whom the police recovered the Morrisons' pistol, testified that Hood asked him if he wanted to buy a gun, and when Roberson asked how much it would cost, Hood replied, "Well, I don't know, maybe $50." Roberson later contradicted this testimony, in part, by saying that it was Simmons who said she wanted $50 for the gun. Roberson also testified that Linda Simmons showed him the gun, and, after he took it from her, she said, "Give the money to Tony," and he did. Roberson explained that he had originally told the police that the gun was Hood's because Hood told him, "If anything came up just tell [them] it was mine." This statement does not necessarily fulfill the requirement for a distinct and conscious assertion of the right to the property. The statement was ambiguous. It could have meant that the pistol was not his, but that the buyer should say it was his (Hood's), or it could have meant that it was his (Hood's) pistol.

Roberson's testimony was uncertain regarding the date on which he bought the gun from Hood. Although he admitted that he allowed the police to lead him in his written statement, he stated at trial that the transaction occurred "around Thursday or Wednesday night almost Thanksgiving." Morrison testified that the burglary of his home occurred sometime between when he left on November 26 and when he returned on November 30. Roberson's testimony, therefore, places the sale of the pistol within a few days of the burglary. This testimony is sufficient to establish recency.

We turn to the element of possession. Hood contends that even though he was in some way involved in the sale of the weapon, he never possessed it physically and thus not personally. In *Beard v. State*, the court held that, in order to convict a defendant of burglary based on his or her possession of stolen property, it is not necessary that the accused have been found in immediate actual possession of the property. 458 S.W.2d 85, 87–88 (Tex.Crim.App.1970). The Court explained

that possession is sufficiently established where a defendant and another person were working together and exercising joint control and possession of the stolen property and were in juxtaposition to the property when it was discovered. *Beard,* 458 S.W.2d 85; *Vasquez v. State,* 804 S.W.2d 606 (Tex.App.–Dallas 1991, no pet.); *see also Robinson v. State,* 658 S.W.2d 779 (Tex.App.–Beaumont 1983, no pet.).

In the present case, based on Roberson's testimony, Hood offered the weapon for sale, told Roberson the price, and took the money in exchange for Simmons handing Roberson the pistol. Additionally, Roberson testified that Hood said that, if any problems arose, "just say it was his [Hood's]." Control of the property can be shared with others and still constitute personal possession when there is a statement claiming ownership.

The cases providing for a constructive or shared personal possession are cases generally involving the law of parties. *Beard,* 458 S.W.2d 85 (the parties were working together); *Sanders v. State,* 155 Tex.Crim. 90, 231 S.W.2d 413 (1950) (where the action was done in pursuance of a previously formed design); *Vasquez,* 804 S.W.2d 606 (evidence showing a joint enterprise or conspiracy between the defendant and others with access); and, *Markham v. State,* 761 S.W.2d 553 (Tex. App.–San Antonio 1988, no pet.) (conspiracy or acting together is shown).

 Because the law of parties was not applied to the case, Hood cannot be made responsible for any act of Simmons. Thus, personal possession of the stolen pistol by Simmons cannot constitute possession by Hood, even though he solicited a purchaser and under Simmons's instruction was given the money for the sale of the pistol.

Next we address the requirement that the possession be unexplained. The courts in most of the unexplained possession cases focus on the time when the defendant was arrested or discovered in possession of the

stolen property. There are cases, however, that extend the duty to explain through the trial of the case.[2] An example is *Lewis v. State,* 763 S.W.2d 458 (Tex.App.–Houston [1st Dist.] 1988, no pet.). The *Lewis* case involved the defendant having been seen with a stolen saddle and having attempted to sell the saddle to several acquaintances. The appellate court found that the defendant's failure to testify or offer any evidence in explanation of why he had been in possession of the stolen property created the inference that he had stolen the property.

 The record must demonstrate that the defendant's explanation of possession of the stolen property is either false or unreasonable before the evidence will support the conviction of burglary, and whether the defendant's explanation is reasonable is an issue to be determined by the trier of fact. The falsity of the explanation may be shown by circumstantial evidence. *Adams v. State,* 552 S.W.2d 812 (Tex.Crim.App.1977).

Hood offered evidence at the trial to show (1) that he had not possessed the stolen property and (2) that Linda Simmons alone had stolen the property. The jury had reason to disbelieve the testimony of Linda Simmons, because her testimony that Hood was not present and had nothing to do with the sale of the stolen property was disputed by both of the witnesses who had purchased the stolen property. The jury may also have chosen to disbelieve the testimony of Simmons that she was alone when she burglarized the home because of testimony suggesting that she was not strong enough to bend bars on the windows or overcome other difficulties in entering the home. Hood also argues that his juxtaposition to the stolen pistol at the time of its sale is explained by his relationship with Linda Simmons. Simmons, however, did not testify that Hood was participating in the sale of the property because of his relationship with her, but rather Simmons said that Hood did not participate

---

2. The inference that may be drawn from possession unless a defendant provides some explanation after the arrest has been found not to violate a defendant's Fifth Amendment constitutional rights. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Turner v.*

*United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); *Hall v. State,* 490 S.W.2d 589 (Tex.Crim.App. 1973).

at all and was not present at the time of the sale. In *Dove v. State*, the court was dealing with a case in which a stereo and transistor radio taken in a burglary were found in an apartment occupied by the defendant and a woman. 402 S.W.2d 913 (Tex.Crim.App. 1966). In dealing with the matter of exclusiveness, the court found that the jury might reasonably have concluded that the woman was physically incapable of kicking in the bottom of an air conditioner, dropping from the ceiling to the floor, and then forcing entry to a safe by the use of a four-pound sledgehammer, a chisel, and a punch. The jury had sufficient evidence to have disbelieved Simmons's testimony.

▆▆ There is, however, a line of cases in Texas that emphatically states that it is not the falsity of the explanation made by the defendant during the course of the trial that the State is required to prove; rather, the State must prove false the explanation that the defendant makes when his possession of the stolen property is first called into question. *Banks v. State*, 271 S.W.2d 661 (Tex. Crim.App.1954). Any inference from the fact of possession is not sufficient to sustain a conviction if, when the defendant was first directly or circumstantially called upon to explain his possession of the property, he made a reasonable explanation which was not refuted, showing his honest acquisition of the property. *Prodan v. State*, 574 S.W.2d 100 (Tex.Crim.App. [Panel Op.] 1978). If there is no explanation made by the party when first found in possession of the property and when called upon to explain this possession, then guilt may be inferred. *Williamson v. State*, 30 Tex.App. 330, 17 S.W. 722 (1891).

In the case of *Moreno v. State*, the court stated:

> To convict solely on recent possession of stolen property, and to make it a prima facie case, the property must be stolen by some person, the possession must be recent, the defendant *must be called upon to explain* and fail to explain, or fail to explain when the facts are such as to require an explanation; the defendant *having had an opportunity to do so.*

24 Tex.App. 401, 6 S.W. 299, 300 (1887) (emphasis added).

This line of Texas cases requires the State to rebut the explanation of possession that was given at the time the defendant was found with the property or at the time of the arrest, not at the time of trial. Therefore, it appears only fair that since the explanation given at trial is not required to be rebutted in order to enjoy the benefit of the inference, the State must lay the predicate that Hood gave no explanation or gave a false explanation at the time of his arrest or at the time he was found with the property. No witness was asked and no witness testified regarding whether Hood gave an explanation of his possession of the stolen property at the time of his arrest or thereafter.

Because there was no evidence showing that Hood ever possessed the property and there was no evidence concerning his explanation of possession or the absence thereof at the time of his arrest, no inference of guilt arose. The evidence of the fingerprint outside the house did not place Hood inside the house which, in the absence of the application of the law of parties, would be a necessary element to establish the offense of burglary. There is no other evidence that shows that Hood committed the offense of burglary. Even viewing the evidence as a whole in the light most favorable to the verdict, we find that a rational trier of fact could not have found that Hood entered and took property from the habitation, an essential element of the crime, beyond a reasonable doubt. Hood's point of error is sustained.

The judgment of the trial court is reversed, and a judgment of acquittal is entered.