COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

MAURICIO MICHEL,
)
 No. 08-03-00080-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 109th District Court

)


THE STATE OF TEXAS,
)
 of Andrews County, Texas

)


 Appellee.
)
 (TC# 4223)


O P I N I O N



 Mauricio Michel appeals his conviction for felony theft of a firearm with enhancement. A
jury found Appellant guilty and assessed punishment at ten years' confinement. Finding that his
motion to suppress should have been granted, we reverse and remand.

FACTUAL SUMMARY


 Shannon Willis arrived home in Andrews County on January 24, 2002 to discover that his
house had been burglarized. Willis was a gun collector and seven of his pistols were stolen. He had
recorded the serial numbers of all his guns in anticipation of procuring insurance, but had not yet
done so. He called the police, who came to his house, took fingerprints, and investigated the scene. 
Willis gave the police the serial numbers and identifying details of the pistols stolen. The police then
had the dispatcher enter the make, caliber, serial number, and model number of the stolen pistols into
the NCIC, so that if they were recovered their owner could be located. Police were unable to retrieve
usable fingerprints.

 On January 30, 2002, Lovington police officers Brad Riley and David Rodriguez responded
to a call on West Tyler Street. The officers saw Appellant standing on his porch across the street,
and Appellant asked if they were there about the gun shots. The officers asked for consent to enter
Appellant's house in order to examine the scene of the shooting. They found evidence of gunfire,
and Appellant was arrested for interfering with their investigation. Riley then conducted a protective
sweep of the house and found two firearms under the carpet in a bedroom. After completing the
sweep, Riley called Detective Jamie Harden to investigate the scene. Harden photographed the
weapons, collected them from the scene, and took them to the Lovington Police Department. The
guns were fingerprinted, but no prints of value were found. The serial numbers were run through
the NCIC. The Glock 17 nine millimeter gun matched the serial number of a pistol stolen from
Willis's residence. The Colt pistol matched another serial number in the system except for one
digit. (1) Appellant was indicted for theft of a firearm, with enhancement. On appeal he complains of
the denial of his motion to suppress, the legal and factual sufficiency of the evidence, and improper
jury argument. We will address the render point first, as we are required to do, and then focus on
the remand issues. This analysis requires that we consider Appellant's points of error out of
numerical order.

LEGAL SUFFICIENCY OF THE EVIDENCE


 In Point of Error No. Two, Appellant challenges the sufficiency of the evidence to support
his conviction. In reviewing the legal sufficiency of the evidence to support a criminal conviction,
we must review all the evidence, both State and defense, in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds by Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard
gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443
U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. All the evidence that the jury was permitted to
consider properly or improperly must be taken into account in determining the legal sufficiency of
the evidence. Garcia v. State, 919 S.W.2d 370, 378 (Tex.Crim.App. 1994); Johnson v. State, 871
S.W.2d 183, 186 (Tex.Crim.App. 1993). We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158; Chesnut v. State, 959 S.W.2d
308, 311 (Tex.App.--El Paso 1997, no pet.).

 Appellant was charged with theft of a firearm, a state jail felony. Tex.Pen.Code Ann. §
31.03(e)(4)(C)(Vernon 2003). The essential elements of a conviction for theft include the unlawful
appropriation of property and the intent to deprive the owner of property. Tex.Pen.Code Ann. §
31.03(a). "Appropriate" means the acquisition of or the exercise of control over property other than
real property. Tex.Pen.Code Ann. § 31.01(4)(B). Appellant appears to challenge the element of
appropriation by claiming there is no evidence that he ever knew about the guns, handled them, or
exercised care, control, management, or custody over the guns.

 Recent, unexplained possession of stolen property is a sufficient circumstance, in and of
itself, to convict a possessor of stolen property of the theft of the property. See Sutherlin v. State,
682 S.W.2d 546, 549 (Tex.Crim.App. 1984); Taylor v. State, 921 S.W.2d 740, 744 (Tex.App.--El
Paso 1996, no pet.). This rule of sufficiency is based upon a belief that those who steal property
usually remain in possession of it for some time afterwards and persons acquiring property honestly
during such an interval are typically willing to explain how they came by it. See Chavez v. State, 843
S.W.2d 586, 588 (Tex.Crim.App. 1992); Sweeny v. State, 925 S.W.2d 268, 270-71 (Tex.App.--
Corpus Christi 1996, no pet.). Mere possession of stolen property, however, does not give rise to
a presumption of guilt; it is only an inference of guilt which is not conclusive. See Hardesty v. State,
656 S.W.2d 73, 77 (Tex.Crim.App. 1983). To warrant an inference of guilt from the evidence of
possession alone, such possession must be personal, recent, and unexplained, and must involve a
distinct and conscious assertion of the right to the property by the defendant. Sutherlin, 682 S.W.2d
at 549; Taylor, 921 S.W.2d at 745. If the defendant explains his possession of the property, the
record must demonstrate the explanation is false or unreasonable. See Adams v. State, 552 S.W.2d
812, 815 (Tex.Crim.App. 1977); Taylor, 921 S.W.2d at 744. Whether the defendant's explanation
is false or unreasonable is an issue to be decided by the trier of fact, and the falsity of the explanation
may be shown by circumstantial evidence. See Adams, 552 S.W.2d at 815; Havard v. State, 972
S.W.2d 200, 202 (Tex.App.--Beaumont 1998, no pet.), quoting Price v. State, 902 S.W.2d 677, 680
(Tex.App.--Amarillo 1995, no pet.). Additionally, the defendant's explanation must be made when
he is first called upon directly or circumstantially to do so. See Chavez, 843 S.W.2d at 587; Smith
v. State, 518 S.W.2d 823, 824 (Tex.Crim.App. 1975), overruled on other grounds by Hardesty v.
State, 656 S.W.2d 73, 77 (Tex.Crim.App. 1983); Taylor, 921 S.W.2d at 745. If the defendant fails
to offer an explanation when first called upon to do so, the State is not required to refute an
explanation made for the first time at trial. See Valdez v. State, 623 S.W.2d 317, 322
(Tex.Crim.App. 1979); Simmons v. State, 493 S.W.2d 937, 939 (Tex.Crim.App. 1973).

 The record reflects that each element required to warrant an inference of guilt is present. The
firearms were discovered approximately five days after the burglary occurred. They were found
inside Appellant's residence and there is no evidence that other persons had an equal right or facility
of access to Appellant's home. See England v. State, 727 S.W.2d 810, 811 (Tex.App.--Austin 1987,
no pet.)(holding that an inference of guilt based on the accused's personal possession of stolen goods
is not raised where the stolen property is found in a place where others had an equal right and facility
of access). The guns were hidden under the carpet in a bedroom and Appellant offered no
explanation for their presence. Although he testified that he had a party that evening and that he did
not personally know all of the attendees, he never contended that one of the party-goers placed the
guns under his carpet.

 Our review of the record yields more than sufficient evidence to permit a rational jury to find
beyond a reasonable doubt that Appellant was guilty of theft of a firearm. Therefore, the evidence
is legally sufficient to sustain his conviction. Point of Error No. Two is overruled. We defer for the
moment consideration of his factual sufficiency complaint.


MOTION TO SUPPRESS


 In Point of Error No. One, Appellant challenges the trial court's denial of his motion to
suppress. He contends that the officers did not have consent to search or a search warrant and that
the search did not fall under the protective sweep exception to the Fourth Amendment. (2)

Standard of Review


 We review the denial of a motion to suppress for an abuse of discretion. Oles v. State, 993
S.W.2d 103, 106 (Tex.Crim.App. 1999). An abuse of discretion occurs when the trial court's
decision was so clearly wrong as to lie outside the zone of reasonable disagreement. Cantu v. State,
842 S.W.2d 667, 682 (Tex.Crim.App. 1992); Montgomery v. State, 810 S.W.2d 372, 391
(Tex.Crim.App. 1990)(op. on reh'g). The court's findings of fact are given almost total deference,
and in the absence of explicit findings, we assume the trial court made whatever appropriate implicit
findings are supported by the record. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.Crim.App.
2000); Guzman v. State, 955 S.W.2d 85, 89-90 (Tex.Crim.App. 1997). However, we review de novo
the application of the relevant law to the facts, including Fourth Amendment search and seizure law. 
Carmouche, 10 S.W.3d at 327. When the facts are undisputed and we are presented with a pure
question of law, de novo review is proper. Oles, 993 S.W.2d at 106. Thus, for example, when the
issue to be determined on appeal is whether an officer had probable cause, the trial judge is not in
an appreciably better position than the reviewing court to make that determination. Guzman, 955
S.W.2d at 87. Therefore, although due weight should be given to the inferences drawn by trial
judges and law enforcement officers, determinations of matters such as reasonable suspicion and
probable cause should be reviewed de novo on appeal. Id., citing Ornelas v. United States, 517 U.S.
690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

 A judicial ruling will not be reversed on appeal, even if made for the wrong reason, if the
ruling is supported by the record and correct on any theory of law applicable to the case. Villarreal
v. State, 935 S.W.2d 134, 139 (Tex.Crim.App. 1996); Romero v. State, 800 S.W.2d 539, 543
(Tex.Crim.App. 1990); Calloway v. State, 743 S.W.2d 645, 652 (Tex.Crim.App. 1988). Similarly,
when officers give the wrong reason for why their actions were legal under the Fourth Amendment,
the case will not be reversed if the facts support a correct reason. Williams v. State, 726 S.W.2d 99,
100-01 (Tex.Crim.App. 1986); Esco v. State, 668 S.W.2d 358, 366 (Tex.Crim.App. 1982).

Evidence Concerning the Seizure


 Officer Riley testified that at 10:30 p.m. on the evening of January 30, 2002, the dispatcher
received a 911 call from a residence on Tyler Street reporting that shots had been fired from a
residence west of his. Riley and another officer went to the scene to determine where the gunfire
originated. When he arrived, Riley did not notice anyone outside or see any vehicles leaving the
area, but he did smell the odor of gunfire. Riley then looked to the north side of the street and saw
a man whom he recognized as Appellant. Riley had dealt with Appellant in the past and had recently
stopped a car in which Appellant was a passenger and from which Riley confiscated a sawed-off shot
gun. Riley also knew that Appellant had been convicted of aggravated assault of a peace officer with
a firearm.

 Appellant asked the officers if they were there because of the gun shots, which Appellant said
had come from the back of his house. The officers asked if they could come inside and Appellant
allowed them to enter. (3) Riley could then smell the gun powder even more strongly. Upon entering
the kitchen, Riley saw shattered glass; the back door was open but the screen was shut. He also
noticed bullet holes in the drywall and spent shell casings on the floor.

 Appellant initially claimed he did not know who had fired the shots at his house, but he later
said that "a friend" did it. He also said that a friend had returned the gunfire. The officers stressed
that they needed to know who was responsible for the shooting and where the weapons were located,
but Appellant refused to identify his friend. He was then taken into custody, handcuffed, and placed
in a locked patrol car. Riley had seen a female walk from the kitchen into a bedroom before he had
entered the house. Because he did not see her after he went inside and there were areas closed off
from his view, Riley conducted a protective sweep to determine who was in the residence. He went
into the bedroom where the woman was located and asked her to step outside. He saw a closed closet
door and stepped to the side in order to open it. As he did so, he stepped on a bulge in the carpet
which made a metal clicking sound. Riley admitted on cross examination that the carpet bulge was
not large enough to accommodate a person and that he was not sure what the object was. He cleared
the closet, rolled the carpet back where it had been pulled up, and found two handguns. He then left
the guns unattended while he completed his protective sweep. 

 Upon returning to the bedroom, Riley found a Glock 17 nine millimeter pistol with a fired
shell lodged in the weapon. The gun appeared to have jammed when it was fired. A Colt pistol was
loaded and ready to be fired. Riley admitted he did not obtain a search warrant. He felt it was
necessary to conduct a protective sweep for his personal safety due to Appellant's history with
weapons, his violent tendencies, and evidence of gunfire at the home. He acknowledged that he had
reason to believe firearms were located in the home and he was looking for them during his
protective sweep. 

Protective Sweep

 A protective sweep is a quick and limited search of premises incident to an arrest and
conducted to protect the safety of police officers or others. Maryland v. Buie, 494 U.S. 325, 328,
110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); Reasor v. State, 12 S.W.3d 813, 815 (Tex.Crim.App.
2000). In Buie, the Supreme Court found that while a defendant has a legitimate privacy interest in
his home, a police officer also has a strong interest in ensuring that the house in which a suspect is
arrested does not contain other persons who are dangerous and who could unexpectedly launch an
attack. Buie, 494 U.S. at 333, 110 S.Ct 1093, 108 L.Ed.2d 276. The Supreme Court determined that
a warrant was not required when officers, as a precautionary matter, were looking in areas from
which an attack could be immediately launched. Id. at 334, 110 S.Ct 1093, 108 L.Ed.2d 276. The
Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home
arrest when the searching officer possesses a reasonable belief based on specific and articulable facts
that the area to be swept harbors an individual posing a danger on the arrest scene. Id. at 337, 110
S.Ct 1093, 108 L.Ed.2d 276; Reasor, 12 S.W.3d at 816. The sweep must not rise to a full search of
the premises and may only extend to a cursory inspection of those spaces where a person may be
found and last only long enough to dispel the reasonable suspicion of danger. Id. at 335, 110 S.Ct
1093, 108 L.Ed.2d 276. 

 We have no doubt that the officers' protective sweep was proper. The officers testified that
Appellant gave them permission to enter his home. He refused to give them information regarding
his "friend" who had returned gunfire. The officers had taken Appellant into custody and knew a
female was inside the residence. They had seen evidence of gunfire, broken glass, bullet holes in
the drywall, and spent shell casings on the floor. Riley testified that he conducted the sweep due to
Appellant's history with weapons, his violent tendencies, and evidence of recent gunfire. He had
reason to believe that weapons were present in the residence. The officers were in the home with
permission, took Appellant into custody, and articulated facts that the area to be swept harbored an
individual posing a danger on the arrest scene. Buie, 494 U.S. at 337. Riley looked into the closet
because it was large enough to hold a person. Id. at 335. We conclude the protective sweep and
search of the bedroom closet was proper.

 However, the discovery of the firearms is more problematic. It does not fall within the
protective sweep exception to the requirement of a warrant which authorizes only a cursory
inspection. Reasor, 12 S.W.3d at 816. Officers are given authority to inspect spaces large enough
to hold a person, not to pull back carpets and open drawers. See id.; Ramirez v. State, 105 S.W.3d
730, 743 (Tex.App.--Austin 2003, no pet.)(disallowing the opening of a cooler under the protective
sweep exception because the officer could not reasonably believe it held a person); Torrez v. State,
34 S.W.3d 10, 18 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd)(expressing concern as to
whether the opening of drawers, moving of furniture, opening of kitchen cupboards, searching under
and between mattresses, and searching the top of closet shelves constituted a cursory inspection). 
Riley admitted that the carpet bulge he stepped on could not have hidden a person. Buie, 494 U.S.
at 335. We must next determine whether the seizure of the firearms was permissible under another
exception.

Search Incident To Arrest

 When a suspect is arrested, officers may search his person and the area within his immediate
control for weapons that might be used to harm the officers and for evidence that might be destroyed.
Jones v. State, 568 S.W.2d 847, 856 (Tex.Crim.App. 1978). The record suggests that Appellant was
arrested inside the kitchen area while the officers were viewing the evidence of gunshots. The
officers would have been justified in searching the kitchen as an area from which Appellant might
have gained possession of a weapon. See Jones, 568 S.W.2d at 856. However, the firearms weren't
found in the kitchen; they were located in a bedroom. Although the officers discovered a woman
in the bedroom where the guns were discovered, there is no evidence that she was armed or that she
was arrested. Consequently, the discovery would not fall under this exception. 

Exigent Circumstances

 Exigent circumstances may also justify a warrantless search. A finding of exigent
circumstances usually includes factors pointing to some danger to the officer or victims, an increased
likelihood of apprehending a suspect, or the possible destruction of evidence. McNairy v. State, 835
S.W.2d 101, 107 (Tex.Crim.App. 1991). To prove exigent circumstances existed, the State must
show that the officers could have reasonably concluded that evidence would be destroyed or removed
before they could obtain a warrant. Id. Five factors are relevant to a reasonable determination by
the searching officers that evidence might be destroyed or removed before they obtained a search
warrant: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant;
(2) a reasonable belief that contraband is about to be removed; (3) the possibility of danger to police
officers guarding the site of the contraband while a search warrant is sought; (4) information
indicating the possessors of the contraband are aware that police are on their trail; and (5) the ready
destructibility of the contraband. Id. at 107, citing United States v. Rubin, 474 F.2d 262, 268 (3rd
Cir. 1973).

 Once Riley discovered the firearms, he continued to secure the remaining rooms of the house
before returning to the guns and calling Detective Hardin. There is no indication of urgency since
the house had already been secured. One officer was watching the female occupant of the house, and
Appellant was in custody in the police car. There is no evidence that the officers had a reasonable
belief that the evidence would be removed while a search warrant was obtained or that the officers
would be in danger while awaiting the warrant. Thus, exigent circumstances do not justify the
warrantless seizure of the firearms.

Plain View Doctrine

 The plain view doctrine provides yet another exception to the requirement of a warrant. It
requires that an officer see an item in plain view at a vantage point where he has the right to be, and
that the officer immediately recognize the seized item constitutes evidence. Martinez v. State, 17
S.W.3d 677, 685 (Tex.Crim.App. 2000); Ramos v. State, 934 S.W.2d 358, 365 (Tex.Crim.App.
1996). The seizing officer must also have probable cause to associate the item with criminal activity. 
Martinez, 17 S.W.3d at 685. However, the exception does not justify warrantless, exploratory
searches of closed containers that purport to contain innocuous materials. Id. 

 Officer Riley had a plain view of the bulge in the carpet, but not a plain view of the guns. 
While he heard a metal clicking sound when he stepped on the bulge, he did not immediately
recognize what was under the carpet. Because the guns were not in the officer's "plain view," this
exception does not apply.

Harm Analysis


 Having found error, we proceed to a harm analysis. As a general rule, error in the admission
or exclusion of evidence does not rise to a constitutional level. Arzaga v. State, 86 S.W.3d 767, 776
(Tex.App.--El Paso 2002, no pet.). Therefore, we apply the harmless error standard found in
Tex.R.App.P. 44.2(b). Under this rule, the erroneous admission of evidence warrants reversal only
if the evidence had a substantial and injurious effect or influence in determining the jury's verdict. 
See Morales v. State, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000); King v. State, 953 S.W.2d 266,
271 (Tex.Crim.App. 1997). If the error had no influence or only a slight influence on the verdict,
it is harmless. Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). In assessing the
likelihood that the error adversely affected the jury's decision, we consider everything in the record,
including all testimony and evidence admitted for the jury's consideration, the nature of the evidence
supporting the verdict, the character of the alleged error, and how the error might have been
considered in connection with other evidence in the case. See Motilla v. State, 78 S.W.3d 352, 355-56 (Tex.Crim.App. 2002). We may also consider the State's theory of the case, any defensive
theories, closing arguments, and voir dire. See Motilla, 78 S.W.3d at 355-56; Arzaga, 86 S.W.3d
at 776.

 Appellant was charged with theft of a firearm. In order to convict Appellant of theft of a
firearm, the State necessarily had to show that Appellant unlawfully appropriated the guns and that
Appellant intended to deprive the owner of the guns. See Tex.Pen.Code Ann. § 31.01(4)(B). 
Appellant was convicted as a result of his possession of the guns, which was personal, recent,
unexplained, and involved a conscious assertion of his right to the property. See Sutherlin, 682
S.W.2d at 549; Taylor v. State, 921 S.W.2d 740, 744 (Tex.App.--El Paso 1996, no pet.). Absent
admission of the guns, the State had no other evidence to show that Appellant had possession of the
guns. Therefore, the jury's verdict rested solely on the warrantless search and seizure of the firearms
found in Appellant's house. This evidence then substantially and injuriously affected and influenced
the jury's finding of guilt.

CONCLUSION


 We conclude that while the officer had probable cause to apply for a warrant and to secure
the premises while awaiting the warrant, he did not have the authority to search under the carpet. 
Finding that the trial court abused its discretion in denying the motion to suppress the firearms, we
sustain Point of Error No. One. Because our resolution of this issue requires remand, we need not
address factual sufficiency of the evidence. Nor do we consider Point of Error No. Three concerning
improper jury argument. The judgment is reversed and remanded.



May 13, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 4

Barajas, C.J., Larsen, and McClure, JJ.


(Do Not Publish)
1. The serial number in the system was SS23226E, and the serial number on the weapon read SN23226E. Willis
claimed he made an error in transcribing the numbers. 
2. Appellant objects generally to the denial of his motion to suppress, which encompasses his arrest, the seizure
of tangible evidence, his statements, and testimony of the arresting and seizing officers.On appeal, he addresses only the
seizure of the guns. Therefore, he has waived any complaint regarding the seizure of items other than the firearms. 
3. The record does not indicate that Appellant consented to a search of his home.